Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 10/26/12

IN THE UNITED STATES BANKRUPCTY COURT
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ANTHONY JAY WHEELER, | ) | Case No. 12-02452 |
| CARRIE ANN WHEELER | ) | Chapter 7 |
|     Debtors. | ) | Randal S. Mashburn |
| | ) | |
| ROBERT H. WALDSCHMIDT, | ) | |
| TRUSTEE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV No. 12-90228 |
| | ) | |
| BANK OF AMERICA, N.A, | ) | |
| ANTHONY JAY WHEELER | ) | |
| CARRIE ANN WHEELER | ) | |
|     Defendants. | ) | |

# MEMORANDUM OPINION

What a difference a day makes. The Chapter 7 Trustee is attempting to exercise his "strong-arm powers" to bring the Debtors' residence into the bankruptcy estate, and he would be successful if the release of the deed of trust by the secured lender had been recorded the day before the bankruptcy filing instead of the day after.

The secured creditor mistakenly executed a release of the deed of trust during a home refinancing without simultaneously recording the substitute deed of trust. Indeed, the new deed of trust was not recorded as of the date of the bankruptcy filing. Fortunately for the

1

secured creditor, and unfortunately for the Trustee, the release document relating to the old deed of trust was also not recorded until after the bankruptcy petition was filed. Therefore, a deed of trust relating to this property and this secured creditor remained a matter of public record on the day the bankruptcy was filed. The release of that old deed of trust was not recorded until the next day – one day after the Trustee's recovery powers were established for this case.

The result is that the respective rights of the parties must be viewed from the standpoint of how applicable law would treat a refinanced deed of trust that remained of record at that point in time. The Court finds that applicable law would not allow the old deed of trust to be ignored without recognizing the concept of equitable subrogation as it relates to the new substituted deed of trust. Thus, the Trustee's effort fails.

## A. Background

This matter is before the Court on the cross motions for summary judgment filed by Bank of America ("BOA") and Robert H. Waldschmidt, Chapter 7 Trustee ("Trustee"). The parties agreed that there were no factual disputes and that the sole issue involved an interpretation of law based on the peculiar circumstances arising out of the case. The following constitutes the Court's findings of fact and conclusions of law. *Fed.R.Bankr.P. 7052; 7056(a).*

These facts have been stipulated or are not in dispute based upon the evidence in the record:

1.  The debtors, Anthony Jay Wheeler and Carrie Ann Wheeler ("Debtors"), filed a Chapter 7 bankruptcy petition on March 13, 2012, and Robert H. Waldschmidt is the Chapter 7 Trustee.

2

2.  The Debtors were the owners of their residence at 118 Deer Drive, La Vergne, Tennessee (the "property"), subject to a properly recorded deed of trust (the "2007 Deed of Trust") for the benefit of Countrywide Home Loans, Inc. ("Countrywide") reflecting a stated value of $279,000.

3.  BOA became the successor to Countrywide, and on February 24, 2012, less than a month before the bankruptcy, the Debtors obtained refinancing from BOA (the "ReFi Loan").

4.  The ReFi Loan satisfied the old debt of approximately $261,000 to BOA that was secured by the 2007 Deed of Trust and created a new debt secured by a new deed of trust in favor of BOA (the "2012 Deed of Trust"). This new debt to BOA was reflected in the Debtors' bankruptcy schedules.

5.  As a part of the closing documents for the ReFi Loan, a release of the 2007 Deed of Trust was executed (the "Release"). Although the Release was signed on March 8, 2012, and the new loan had been funded by that time, the Release was not recorded until March 14, 2012, one day after the bankruptcy filing. Therefore, on the date of the bankruptcy, the 2007 Deed of Trust remained of record, the Release was unrecorded, and the 2012 Deed of Trust had also not yet been recorded – even though the ReFi Loan transaction had otherwise been consummated within the prior month.

## B. Summary Judgment Standards

Under Fed.R.Civ.P. 56(c), made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c); see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir. 2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak,* 503 F.3d at 577; *Skowronek v. Am. S.S. Co.*, 505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

The filing of cross-motions does not alter the standards governing the determination of summary judgment motions. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "Cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." *Schafer v. Rapp (In re Rapp),* 375 B.R. 421, 428 (Bankr. S.D. Ohio 2007) (*quoting Greer v. United States,* 207 F.3d 322, 326 (6th Cir. 2000)).

After reviewing all the material submitted to the Court and stipulated by the parties, the Court concurs with the parties that there are no material facts in dispute, there are no further facts that need to be developed that would assist in a resolution of this case, and this matter can be decided purely as a matter of law.

### C. The Bankruptcy Estate and Trustee Powers

The filing of a bankruptcy petition creates an "estate" composed, among other things, of "all legal or equitable interests of the debtor in property as of the commencement of the case[.]" *11 U.S.C. § 541(a)(1).* The Trustee in the bankruptcy case then becomes the representative of the bankruptcy estate, (*11 U.S.C. § 323(a)*) with the authority to "collect and reduce to money the property of the estate for which such Trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]" *11 U.S.C. § 704(a)(1).*

A bankruptcy Trustee who is claiming under § 541(a)(1), as successor to the debtor, generally cannot acquire any greater rights in property than the debtor. *In re Dunlap*, 158 B.R. 724 (Bankr. M.D. Tenn. 1993). However, property of the bankruptcy estate is not so limited. In

particular, §§ 541(a)(3) and (a)(4), bring into the bankruptcy estate property that the debtor does not own but that the Trustee is able to recover for the benefit of creditors under one or more of his special avoidance powers, such as 11 U.S.C. § 544, the so called "strong-arm" powers. *11 U.S.C. § 541(a).*

Section 544(a) provides in relevant part:

(a) The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the Trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> * * *
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

*11 U.S.C. § 544(a); In re Biggs*, 377 F.3d 515, 517 (6th Cir. 2004). "Simply stated, the bankruptcy Trustee is in the same position, with respect to real estate, as if he were a bona fide purchaser ("BFP") who bought the property from the debtor on the filing date and simultaneously perfected the transfer by recording a deed." *In re Reasonover*, 236 B.R. 219, 227 (Bankr. E.D. Va. 1999) *subsequently remanded by* 238 F.3d 414 (4th Cir. 2000). Similarly, the Trustee steps into the shoes of a hypothetical judgment lien creditor who recorded a judgment lien on the date of the bankruptcy filing. Even though federal law vests the Chapter 7 Trustee with the

5

rights and powers of a such a judicial lien creditor, applicable state law determines what rights and powers exist. *Waldschmidt v. Dennis (In re Muller),* 185 B.R. 552 (Bankr. M.D. Tenn. 1995). In this case, Tennessee state law determines what rights the Trustee acquired pursuant to § 544(a).

### D. Role of Equitable Subrogation

The inquiry, therefore, is: if the Trustee had purchased the property as of commencement of the case and recorded the deed on that same day, would he have taken free and clear of BOA's interest? *Biggs*, 377 F.3d at 517. Or if the Trustee held a judgment lien recorded on the date of the bankruptcy filing, would that judgment lien recorded subsequent to the 2007 Deed of Trust nevertheless have superior rights to the 2007 Deed of Trust that had been the subject of the ReFi Loan?

A snapshot of the petition date looks like this:

**2007 Deed of Trust & Debt**: BOA has paid itself to satisfy the 2007 debt; a Release of the 2007 Deed of Trust is executed but not yet recorded; the 2007 Deed of Trust has always been and remains properly recorded.

**2012 Refinanced Loan:** New debt has been fully funded; 2012 Deed of Trust executed but not yet recorded.

As a matter of pure timing and the status of recorded documents, if the Trustee, as a BFP, recorded his deed on the petition date, he would normally be second in line behind BOA's 2007 Deed of Trust. Generally, liens are given priority based on the order in which they are recorded. *See T.C.A. § 66-26-105* (1993). Under Tennessee's race notice statute, a first-filed instrument has preference over a later-filed document, even one that was executed first. *Harris*

6

v. Buchignani*, 285 S.W.2d 108 (Tenn. 1955); *Milledgeville United Methodist Church v. Melton*, 2012 WL 4044726 (Tenn. Ct. App., Sept. 14, 2012).

The Tennessee Supreme Court has explicitly held that "[a] legally registered deed of trust places subsequent creditors and purchasers on constructive notice**.**" *In re Marsh*, 12 S.W.3d 449, 454 (Tenn. 2000). In other words, as of the snapshot at the commencement of the case, BOA held a legally recorded, first-in-time, lien on the Debtors' property, and the Trustee "bought" the property subject to that prior lien.[1]

The Trustee contends that the existence of the recorded 2007 Deed of Trust is no bar to his recovery. His argument is that on the date of filing, the old debt owed to BOA that supported the 2007 Deed of Trust had already been paid in full, replaced by a new debt supporting an unrecorded 2012 Deed of Trust. Furthermore, he argues that the release, though not yet recorded, was fully executed and enforceable between the parties. The Trustee contends that had he requested an 11 U.S.C. § 506(a) valuation hearing as of the petition date, BOA's claim would have been properly valued at zero, and therefore any lien should have been declared a nullity based on the nonexistent debt. Likewise, he argues that, outside of bankruptcy, a state court would have no choice but to void the old lien or force BOA to record the release since the underlying debt had been satisfied. The Trustee, therefore argues that when the bankruptcy estate came into existence, his rights as a judgment lien creditor and/or as a BFP were superior to BOA.

---

[1] The same result applies if it is viewed from the standpoint of the hypothetical judgment lien creditor. That hypothetical judgment lien, considered recorded as of the date of the bankruptcy filing, was second in line behind the 2007 Deed of Trust – again assuming we are looking purely at the public recordings and not applying any other legal or equitable principles.

7

The Trustee's argument is somewhat tempting. Intuitively, it makes sense that the Trustee's rights as a BFP or lien creditor would be superior to a lien that was, at that point, no longer supported by an indebtedness. However, to really understand the rights of the parties, it is necessary to review exactly what rights each party had on that particular date, under applicable state law. It is inappropriate to look at what a BFP or hypothetical judgment creditor might be able to do in a vacuum in terms of voiding or ignoring the prior lien without also taking into account the defenses and equitable remedies that would be available to the holder of such lien under those specific circumstances.

The fact that the debt was paid off prepetition does not prevent BOA from seeking equitable subrogation, as it has asserted in this case. *See In re Reasonover*, 236 B.R. 219, 233 (Bankr. E.D. Va. 1999) ("Although the [creditor's] deed had actually been paid off, such payment would not bar a claim of equitable subrogation."); *Gatewood v. Gatewood*, 75 Va. 497 (1881) (on mortgage debt paid off but not released, court allowed payor to be equitably subrogated to rights of deed of trust holder). Thus, BOA may claim equitable subrogation to the extent of the unreleased deed of record because that is the status that the Trustee inherited on the date of the petition.

Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Blakenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn. 1999) (citing *Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 674 (1968)). In its most basic form, subrogation

8

means that Party A is substituted for Party B and is allowed to assert the rights and claims that Party B had against Party C. *Id*.

The question of whether subrogation will be afforded is answered by equitable principles. *Id*., 432 S.W.2d at 676. Subrogation is a remedy whose application depends upon the balancing of the equities involved. *See Lawyers Title Ins. Corp. v. United Am. Bank*, 21 F.Supp.2d 785, 792 (W.D. Tenn. 1998). Subrogation "will not be enforced when it would work injustice to the rights of those having equities." *Castleman Constr. Co*., 432 S.W.2d at 674.

Subrogation is a creature of equity and, as such, its principles are naturally flexible, and its purpose is to provide an equitable adjustment based on the facts and circumstances of a particular case. *Castleman Constr. Co.,* 432 S.W.2d at 675; *Walker v. Walker*, 200 S.W. 825, 825 (1917); *Lawyers Title Ins. Corp. v. United American Bank*, 21 F. Supp.2d 785, 792 n .2 (W.D.Tenn. 1998). The doctrine of equitable subrogation is one "which will be applied or not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand it." *Dixon v. Morgan*, 285 S.W. 558, 560 (1926).

There can be little doubt that, under Tennessee law, state courts would recognize equitable subrogation rights in favor of BOA. In this case, it does not even require the substitution of one party for another but merely one debt for another that arose out of a simple refinancing of one debt for another. Before the refinancing, BOA had a lien on the property. After the refinancing, BOA still had a lien on the property. The Debtors always owed the money, and there was always a lien on the books. There was no pre-bankruptcy gap when a

9

lien could not be found in the public records. There was no point when a recorded deed of trust for the benefit of BOA was missing. Indeed, right up to the filing of the bankruptcy petition (and one day after), any BFP or judgment creditor looking at the records would be fully aware of the existence of a mortgage on the property. The money was owed; the lien had been granted, and a lien was publically recorded at the magic point: the bankruptcy filing.

The Trustee, however, argues that under the Sixth Circuit's decision in *In re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir. 1994), this Court may not utilize equitable remedies that have not previously been imposed by a state court. The Trustee argues:

> A Court of Equity must "apply" the doctrine of equitable subrogation, before it exists. Under the law, it does not exist. It is not until a Court applies equitable principles and determines that a party is entitled to subrogation, that an unperfected claimant can be placed in a priority to a judicial lien creditor or a bankruptcy Trustee…
>
> There is no authority in Tennessee establishing that an equitable lien or any equitable rights actually exists, until a court of equity has imposed it or established it.
>
> * * *
>
> Under Sixth Circuit law, a bankruptcy court should not create or impose new equitable liens or rights (which might [a]ffect the rights of parties in the case), the Court in this case should not apply the doctrine of equitable subrogation, merely because Tennessee courts (outside of bankruptcy) might be inclined to do so.

*Supplemental Reply Brief in Response to Reply Brief of Bank of America,* Docket Number 21, (Aug. 31, 2012).

As the Court understands the Trustee's argument, this Court could not impose an equitable remedy based on what Tennessee courts would do, and it should only fashion a remedy, to the extent one is warranted, based on federal equitable principles.

10

This Court disagrees with the Trustee's interpretation of the *Omegas* decision. *Omegas* addressed the collision of the bankruptcy's ratable distribution scheme to unsecured creditors and principles of state law. The Sixth Circuit found that a Trustee may use Section 544(a)'s strong arm powers to defeat an inchoate claim of an equitable interest in property held by the debtor at the commencement of the case. *Omegas*, 16 F.3d at 1451.

The court in *Omegas*, in response to an argument that section 541(d) excludes property subject to an equitable trust from the bankruptcy estate, held that an equitable trust is a judicially-created remedy that does not exist until a claimant actually obtains such remedy from a court. *Id.* Therefore, the *Omegas* court concluded, a claimant cannot represent that he was a beneficiary of an equitable trust held by the debtor unless a court has already impressed an equitable trust at the time of the bankruptcy petition. The court further concluded that the Bankruptcy Code's system of equitable distribution is paramount to the bankruptcy court's creation of an equitable trust, stating:

> Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor. "Ratable distribution among all creditors" justifies the Code's placement of the Trustee in the position of a first-in-line judgment creditor and bona fide purchaser for value, empowered to avoid certain competing interests ... so as to maximize the value of the estate.... The Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern and entitlement to shares of the estate secondary. Imposing a constructive trust on the debtor's estate impermissibly subordinates this primary concern to a single claim of entitlement.

*Omegas,* 16 F.3d at 1452-53.

Nothing in *Omegas,* however, prevents this Court from recognizing an equitable remedy, especially one that is not in conflict with the bankruptcy's ratable distribution scheme.

11

For example, Judge Lundin in *In re Biggers*, decided after *Omegas*, allowed a car lender who refinanced its own prior debt to retain its perfected status despite the Trustee's preference allegations because the refinancing of the same debt had "no preferential effect." *In re Biggers*, 249 B.R. 873 (Bankr. M.D. Tenn. 2000).

In *Biggers*, the debtors refinanced, with the same lender, a truck on September 14, 1998. The lien was noted on the title on October 9, 1998. The debtor filed bankruptcy on November 12, 1998. *Biggers* held that the renewal of the lien or security interest merely continued an existing interest and did not diminish the bankruptcy estate. *Id.* at 877. Judge Lundin found his decision to be generally in accord with Sixth Circuit law, citing *Waldschmidt v. Midstate Homes (In re Pitman),* 843 F.2d 235 (6th Cir. 1988) (finding a "contemporaneous exchange" preference defense viable where the estate was not diminished). Because the refinancing did not deplete estate assets, it lacked the preferential effect necessary to set it aside. *Id.*

To fully appreciate the scope and limitations of the *Omegas* decision, consider how it might apply in a slightly altered scenario. Imagine the 2007 Deed of Trust had been released as a matter of record the day before bankruptcy, and there was no recorded lien when the Trustee became a hypothetical judgment lien creditor/BFP. *Omegas* would prevent this Court from retroactively imposing an equitable remedy – i.e., creating an equitable lien – so that a senior lien was treated as being in existence when the Trustee assumed his role as the hypothetical judgment lien creditor or BFP.

12

In this case, the release being recorded the day after instead of the day before bankruptcy makes all the difference. On the date of the bankruptcy filing, the 2007 Deed of Trust was still of record, and an actual judgment lien creditor or actual BFP would have been faced with the fact that it took its position junior to an existing lien as a matter of record. In that situation, *Omegas* is not implicated, because there is no effort or need to impose a lien retroactively that did not already exist as of the date of bankruptcy. Instead, the burden would be on the judgment lien creditor or BFP to attempt to force the senior lien holder to release the lien. This Court is confident that a Tennessee court, applying applicable law, would force the senior lien holder to record a release only if there was a simultaneous substitution of the new lien in the same priority position.

This Court is not being asked to look back to a pre-petition date and speculate about what a state court might have done prior to the bankruptcy if it had been given a chance, but rather this Court is being asked to apply state law principles as of the date of the petition. This Court reads *Omegas* as simply limiting the ability of a bankruptcy court to retroactively impose equitable remedies that had not already been put in place at the time of the bankruptcy filing.

The approach argued by the Trustee would also go beyond the application of § 544(a) and essentially impose a post-petition limitation on the secured creditor rather than merely establishing rights as of the bankruptcy filing. Section 544(a) provides the Trustee with "strong-arm" powers to "avoid any transfer of property of the debtor" that is voidable by certain hypothetical creditors "as of the commencement of the case." The Trustee's avoidance powers granted in § 544 apply only to prepetition transfers of property. *In re Troutman Enterprises,*

*Inc.,* 356 B.R. 786 (6th Cir. BAP 2007) (affirming bankruptcy's court's holding that section 544(b) only applies to prepetition transfers of property). For all practical purposes, the Trustee is seeking the equivalent of post-petition injunctive relief ordering BOA to record the release – but asking that this Court hamstring BOA from asserting any corresponding equitable principles that would limit the Trustee's rights in that regard. This takes § 544(a) a step too far.

A review of the legal proceedings that would likely arise under non-bankruptcy law in this situation provides instruction. The Trustee, as a BFP or judgment lien creditor would have had to take some form of affirmative legal action to defeat BOA's lien of record under these circumstances. For example, *T.C.A. § 66-25-102* imposes sanctions on a lienor for failure to timely release a satisfied lien only after written demands have been made, or suit is filed. A BFP or judgment creditor could file suit under such circumstances to force a release of the lien, but such a party would still have to deal with the rights of BOA and the simple fact that a new unrecorded lien had been granted to substitute for the still recorded old lien that remained a matter of record for all the world to see.

This Court finds equitable subrogation is available to BOA in this limited context. The Trustee's rights as a BFP or judgment lien creditor were not superior to BOA's still recorded lien, albeit subject to a refinanced debt, as of the petition date. The relative priority of competing liens is a matter of federal bankruptcy law, but equitable subrogation rights turn on state law. *Mortgage Electronic Registration Systems, Inc. v. Church*, 423 Fed. Appx., 564, 2011 WL 1885975 (6th Cir. May 18, 2011) (determining priority of tax lien and mortgage creditor, finding

exception to priority may be in the form of equitable subrogation and turning to Michigan state law to determine).

In this case, where the release was not recorded until a day after the bankruptcy filing, the Trustee's rights were subject to the equitable rights that BOA still maintained on that date as a result of continuing to hold a recorded lien. Under these facts, equitable subrogation applies, and the Trustee cannot succeed in bringing the Property into the bankruptcy estate.

### E. Conclusion

Based upon the foregoing, the Court therefore GRANTS Bank of America's Motion for Summary Judgment, and DENIES the Trustee's Motion for Summary Judgment. Granting Bank of America's motion results in the dismissal of the adversary proceeding.[2] The Court will enter an appropriate order reflecting this result contemporaneously herewith.

---

[2] The Trustee's suit also names the debtors to resolve any issues concerning exemptions in the real property. Given the Court's DENIAL of the Trustee's motion for summary judgment, any issue as to the debtors is moot. The adversary proceeding is hereby dismissed as to the debtors as well.

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.